**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **KIMBERLY CEPHAS,** | ) | |
| ***et al.*, and on behalf of themselves** | ) | |
| **and others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:  3:15-cv-332** |
| | ) | |
| **CITY OF RICHMOND, VIRGINIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## FIRST AMENDED COMPLAINT

COME NOW Plaintiffs Kimberly Cephas, Jamie Albert, Solange Cole, Gary Ford, Jennifer Green, Tamara Hayden, Kiesha Hightower, Aja Morrow, Tamekia Simmons, Tyia Venable, Paula Missouri, Latricia Browne, Shay Dennis, Kevin Hill, Katrina Kersey, Aaron Knight, Tasha Moore, Francine Roach, Katrina Sims, Shirley Thomas, Jamie Green, Jewel Sammons, Josephine Barclay, Pamela Phillips, Cher Jackson-Lewis, LuCretia Williams, Ebony Keys, Victor Little, Otissa Williams, Vanessa Johnson, Courtenay Scott, Sonya Allen, Tamoria Corpening, Deborah Cheatham, Glynis Boyd Hughes, Debra Luther, Pamela Piero, Joylynn Givens, Phillip Brandon, Martha Patrick, Tersina Jennings, Lakisha Gravely, Rex Huff, Cheli Feggins-Hunter, Janice Rawlings, DeSeana Evans, Shikita Davis, Tony Ford, Eraka Hersh, Robyn Hunter, Stacy Kennedy, Ebony Malone, Ronald Rathers, and Charity Stutzman, on behalf of themselves and others similarly situated (collectively "Plaintiffs"), by counsel, and make the following allegations on behalf of themselves and all others similarly situated:

## INTRODUCTION

1.      This is an Amended Complaint for the purpose of pleading additional facts about the potential collective or "class" of those similarly situated to Plaintiffs in an action for unpaid overtime compensation brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*., (hereinafter "FLSA").

2.      Plaintiffs, and others who are similarly situated, are or were employed by the Defendant City of Richmond, Virginia's Department of Social Services, ("Defendant" or "City"), as Family Services Specialists, Family Services Workers, Social Work Specialists, Social Workers, and Benefit Programs Specialists.  Plaintiffs regularly work or worked more than forty (40) hours per workweek for the Defendant without receiving overtime compensation as required under the FLSA.

3.      Plaintiffs and similarly situated persons fall into either of two subclasses:

       a.      Employees Misclassified as Exempt: Plaintiffs, and those similarly situated, employed in positions including Family Services Specialist, Social Work Specialist, Family Services Worker, Social Worker, that Defendant misclassified as exempt, salaried employees, despite performing primary job functions to which no exemption applies under the FLSA (referred to as the "Misclassification Class"); or

       b.      Employees Required to Work "Off the Clock": Plaintiffs, and those similarly situated, employed as Benefit Programs Specialist that were classified as non-exempt, who were nevertheless suffered or permitted to work uncompensated overtime hours in violation of the FLSA, (referred to as the "Off the Clock Class".

4.      Upon information and belief, in or around June 2015, the City changed the FLSA classification for all of those Misclassification Class from exempt under the FLSA to non-exempt.

5.      The relevant time period for damages claimed by the Misclassification Class is from three years prior to the filing of this lawsuit up until the date that the City reclassified the FLSA pay status of the Misclassification Class.

6.      Also, this First Amended Complaint adds as Plaintiffs some of those individuals who participated in the lawsuit *Lewis, et al. v. City of Richmond, Virginia* (E.D. Va., Case number 3:14-cv-213-JAG) which settled on March 23, 2015.  For all Plaintiffs who were part of the Lewis settlement, such individuals are only claiming overtime damages from the date following the settlement up through the date that the City reclassified as non-exempt under the FLSA.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 29 U.S.C. §216(b).

8.      Venue is proper in this judicial district under 28 U.S.C. §1391(b).

9.      The Defendant is subject to personal jurisdiction in the Commonwealth of Virginia.

## PARTIES

10.     Cephas is citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Cephas currently works for the Defendant under the title "Family Services Supervisor."  In the three years prior to the filing of this lawsuit, Cephas has also worked under the title of "Family Services Specialist" and "Family Services Worker."  Cephas was hired in or around September 1999.

11.     Albert is a citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Albert currently works for the Defendant under the title "Family Services Worker."  Albert was hired in or around June 2014.

12.     Cole is a citizen and resident of the Commonwealth of Virginia, and was employed by the Defendant until in or around February 2015.  Cole worked for the Defendant under the title of "Family Services Worker."  Cole was hired in or around June 2014.

13.     Ford is a citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Ford currently works for the Defendant under the title "Family Services Worker."  Ford was hired in or around November 2012.

14.     Jennifer Green is a citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Green currently works for the Defendant under the title "Family Services Specialist."  Green was hired in or around October 2007.

15.     Hayden is a citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Hayden currently works for the Defendant under the title of "Family Services Specialist." Hayden was hired in or around October 2008.

16.     Hightower is a citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Hightower currently works for the Defendant under the title of "Family Services Worker."  Hightower was hired in or around June 2013.

17.     Morrow is a citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Morrow currently works for the Defendant under the title "Family Services Specialist."  In the three years prior to the filing of this lawsuit, Morrow

has also worked under the title of "Family Services Worker."  Morrow was hired in or around May 2014.

18.      Simmons is a citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Simmons currently works for the Defendant under the title "Family Services Worker."  Simmons was hired in or around June 2014.

19.      Venable is a citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Venable currently works for the Defendant under the title of "Family Services Worker."  Venable was hired in or around March 2013.

20.      Missouri is a citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Missouri currently works for the Defendant under the title of "Family Services Worker."  Missouri was hired in or around 1980.

21.      Browne is a citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Browne currently works for the Defendant under the title of "Family Services Worker."  Browne was hire in or around December 2012.

22.      Dennis is a citizen and resident of the Commonwealth of Virginia, and was employed by the Defendant until in or around September 2012.  Dennis worked for the Defendant under the title "Social Worker."  Dennis was hired in or around 2003.

23.      Hill is a citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Hill currently works for the Defendant under the title of "Family Services Worker."  Hill was hired in or around June 2014.

24.      Kersey is a citizen and resident of the Commonwealth of Virginia, and was employed by the Defendant until in or around October 2013.  Kersey worked for the

Defendant under the titles of "Social Worker" and "Family Services Worker."  Kersey was hired in or around August 2007.

25.     Knight is a citizen and resident of the Commonwealth of Virginia and was employed by the Defendant until in or around November 2014.  Knight worked for the Defendant under the titles of "Family Services Worker" and "Family Services Specialist."  Knight was hired in or around June 2011.

26.     Moore is a citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Moore currently works for the Defendant under the title of "Family Services Worker."  Moore was hired in or around February 2014.

27.     Roach is a citizen and resident of the Commonwealth of Virginia and was employed by the Defendant until in or around March 2015.  Roach worked for the Defendant under the title of "Family Services Worker."  Roach was hired in or around August 2006.

28.     Sims is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Sims currently works for the Defendant under the title of "Family Services Worker."  Sims was hired in or around July 2000.

29.     Thomas is a citizen and resident of the Commonwealth of Virginia, and is employed by the Defendant.  Thomas has worked for the Defendant under the title of "Family Services Worker."  Thomas was hired in or around June 2006.

30.     Jamie Green is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Green has worked for the Defendant under the titles of "Family Services Worker" and "Family Services Specialist."  Green was hired in or around August 2006.

31.     Sammons is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Sammons has worked for the Defendant under the title of "Family Services Specialist."  Sammons was hired in or around January 2006.

32.     Barclay is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Barclay currently works for the Defendant under the title of "Family Services Specialist."  Barclay was hired in or around August 2006.

33.     Phillips is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Phillips currently works for the Defendant under the title of "Family Services Specialist."  Phillips was hired in or around May 2005.

34.     Jackson-Lewis is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Jackson-Lewis currently works for the Defendant under the title of "Family Services Worker."  Jackson-Lewis was hired in or around May 2011.

35.     LuCretia Williams is a former citizen and resident of the Commonwealth of Virginia and was employed by the Defendant until in or around June 2013.  Williams worked for the Defendant under the title of "Social Worker."  Williams was hired in or around February 2009.

36.     Keys is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Keys currently works for the Defendant under the title of "Family Services Specialist."  Keys was hired in late 2013 or early 2014.

37.     Little is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Little currently works for the Defendant under the title of "Family Services Specialist."  Little was hired in or around December 2004.

38.     Otissa Williams is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Williams currently works for the Defendant under the title of "Family Services Worker."  Williams was hired in or around August 2006.

39.     Johnson is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Johnson currently works for the Defendant under the title of "Family Services Worker."  Johnson was hired in or around September 2012.

40.     Scott is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Scott currently works for the Defendant under the title of "Family Services Worker."  Scott was hired in or around March 2013.

41.     Allen is a citizen and resident of the Commonwealth of Virginia and was employed by the Defendant until in or around September 2014.  Allen worked for the Defendant under the title of "Family Services Specialist."  Allen was hired in or around September 2008.

42.     Corpening is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Corpening currently works for the Defendant under the title of "Family Services Worker."  Corpening was hired in or around September 2011.

43.     Cheatham is a citizen and resident of the Commonwealth of Virginia and was employed by the Defendant until in or around April 2015.  Cheatham worked for the Defendant under the title of "Family Services Worker."  Cheatham was hired in or around December 1998.

44.     Boyd Hughes is a citizen and resident of the Commonwealth of Virginia and was employed by the Defendant until in or around October 2014.  Boyd Hughes worked

for the Defendant under the title of "Family Services Worker."  Boyd Hughes was hired in or around 1997.

45.     Luther is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Luther currently works for the Defendant under the title of "Family Services Worker."  Luther was hired in or around 2000.

46.     Piero is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Piero current works for the Defendant under the title of "Family Services Specialist."  Piero was hired in or around 2001.

47.     Givens is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Givens currently works for the Defendant under the title of "Family Services Specialist."  Givens was hired in or around 1987.

48.     Brandon is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Brandon currently works for the Defendant under the title of "Family Services Worker."  Brandon was hired in or around December 2006.

49.     Patrick is a citizen and resident of the Commonwealth of Virginia and was employed by the Defendant until in or around November 2014.  Patrick worked for the Defendant under the title of "Family Services Worker."  Patrick was hired in or around 2009.

50.     Jennings is a citizen and resident of the Commonwealth of Virginia and was employed by the Defendant until in or around November 2013.  Jennings worked for the Defendant under the title of "Family Services Worker."  Jennings was hired in or around 2011.

51.     Gravely is a citizen and resident of the Commonwealth of Virginia and was employed by the Defendant until in or around January 2015.  Gravely worked for the Defendant under the title of "Benefit Programs Specialist."  Gravely was hired in or around 2002.

52.     Huff is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Huff currently works for the Defendant under the title of "Benefit Programs Specialist."  Huff was hired in or around 2008.

53.     Feggins-Hunter is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Feggins-Hunter currently works for the Defendant under the title of "Family Services Worker."  Feggins-Hunter was hired in or around 2004.

54.     Rawlings is a citizen and resident of the Commonwealth of Virginia and was employed by the Defendant until in or around January 2013.  Rawlings worked for the Defendant under the title of "Benefit Programs Specialist."  Rawlings was hired in or around 1998.

55.     Evans is a citizen and resident of the Commonwealth of Virginia and was employed by the Defendant until in or around 2014.  Evans worked for the Defendant under the title of "Social Work Specialist."  Evans was hired in or around August 2012.

56.     Davis is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Davis currently works for the Defendant under the title of "Family Services Worker."  Davis was hired in or around September 2012.  Davis was a member of the lawsuit *Lewis, et al. v. City of Richmond, Virginia* (3:14-cv-213-JAG) which settled on March 23, 2015.  Davis is not seeking any "double recovery" in this

lawsuit; rather she seeks only such unpaid overtime which accrued after the effective date of the *Lewis* settlement.

57.     Ford is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Ford currently works for the Defendant under the title of "Family Services Worker."  Ford was hired in or around September 2013.  Ford was a member of the lawsuit *Lewis, et al. v. City of Richmond, Virginia* (3:14-cv-213-JAG) which settled on March 23, 2015.  Ford is not seeking any "double recovery" in this lawsuit; rather he seeks only such unpaid overtime which accrued after the effective date of the *Lewis* settlement.

58.     Hersh is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Hersh currently works for the Defendant under the title of "Family Services Worker."  Hersh was hired in or around May 2014.  Hersh was a member of the lawsuit *Lewis, et al. v. City of Richmond, Virginia* (3:14-cv-213-JAG) fwhich settled on March 23, 2015.  Hersh is not seeking any "double recovery" in this lawsuit; rather she seeks only such unpaid overtime which accrued after the effective date of the *Lewis* settlement.

59.     Hunter is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Hunter currently works for the Defendant under the title of "Family Services Specialist."  Hunter was hired in or around July 2007.  Hunter was a member of the lawsuit *Lewis, et al. v. City of Richmond, Virginia* (3:14-cv-213-JAG) which settled on March 23, 2015.  Hunter is not seeking any "double recovery" in this lawsuit; rather she seeks only such unpaid overtime which accrued after the effective date of the *Lewis* settlement.

60.     Kennedy is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Kennedy currently works for the Defendant under the title of "Family Services Specialist."  Kennedy was hired in or around July 2008.  Kennedy was a member of the lawsuit *Lewis, et al. v. City of Richmond, Virginia* (3:14-cv-213-JAG) which settled on March 23, 2015.  Kennedy is not seeking any "double recovery" in this lawsuit; rather she seeks only such unpaid overtime which accrued after the effective date of the *Lewis* settlement.

61.     Malone is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant.  Malone currently works for the Defendant under the title of "Family Services Worker."  Malone was hired in or around October 2013.  Malone was a member of the lawsuit *Lewis, et al. v. City of Richmond, Virginia* (3:14-cv-213-JAG) which settled on March 23, 2015.  Malone is not seeking any "double recovery" in this lawsuit; rather she seeks only such unpaid overtime which accrued after the effective date of the *Lewis* settlement.

62.     Rathers is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant under the title of "Family Services Specialist."  Rathers was hired in or around October 2011.  Rathers was a member of the lawsuit *Lewis, et al. v. City of Richmond, Virginia* (3:14-cv-213-JAG) which settled on March 23, 2015.  Rathers is not seeking any "double recovery" in this lawsuit; rather he seeks only such unpaid overtime which accrued after the effective date of the *Lewis* settlement.

63.     Stutzman is a citizen and resident of the Commonwealth of Virginia and is employed by the Defendant under the title of "Family Services Worker."  Stutzman was hired in or around September 2013.  Stutzman was a member of the lawsuit *Lewis, et al.*

*v. City of Richmond, Virginia* (3:14-cv-213-JAG) which settled on March 23, 2015. Stutzman is not seeking any "double recovery" in this lawsuit; rather she seeks only such unpaid overtime which accrued after the effective date of the *Lewis* settlement.

64.     Defendant City of Richmond is a city within the Commonwealth of Virginia. Plaintiffs worked for an agency within the City called the Richmond Department of Social Services which employs over three hundred (300) employees performing various social services and other support duties. Defendant was Plaintiffs' "employer" within the meaning of 29 U.S.C. § 203(d) at all times relevant hereto.

## FACTS

65.     Plaintiffs and those similarly situated to Plaintiffs have held the job titles of Family Services Worker, Social Worker, Family Services Specialist, Social Work Specialist, and/or Benefit Programs Specialist while employed with Defendant.

66.     The Misclassification Class consists of those Plaintiffs with the job titles of Family Services Worker, Social Worker, Family Services Specialist, and/or Social Work Specialist (collectively "Caseworkers").

67.     The City misclassified such Caseworkers as exempt from overtime under the FLSA until sometime in June 2015 when it properly reclassified them as non-exempt.

68.     The Off the Clock Class consists of those Plaintiffs with the job title of or similar to "Benefit Program Specialists." The City properly classified these individuals as non-exempt under the FLSA, but improperly failed to pay such employees their overtime as required by the FLSA.

**The Misclassification Class:**
**Family Services Workers, Social Workers, Family Services Specialists,**
**and Social Work Specialists (Collectively "Caseworkers")**

69.     The job titles "Social Worker" and "Social Work Specialists" were used by

Richmond DSS until on or around July 1, 2013 at which point Va. Code § 54.1-3709

went into effect requiring individuals holding the title of "social worker" to either be

licensed in social work or hold a baccalaureate or master's degree in social work.  After §

54.1-3709 went into effect, Defendant changed the job title of "Social Worker" to

"Family Services Worker," and the title of "Social Work Specialist" to "Family Services

Specialist."

70.     Plaintiffs' job functions did not change with the change in job title.

71.     Therefore, Plaintiffs, and those similarly situated, who hold or held the titles

"Family Services Worker," "Family Services Specialist," "Social Worker," or "Social

Work Specialist" are herein collectively referred to as "Caseworkers."

72.     Defendant employs, or employed, Plaintiffs within the Richmond Department

of Social Services ("DSS") as Caseworkers.

73.     Caseworkers are investigators whose duties may include, but are not limited

to: conducting field investigations or inspections for violations of law including but not

limited to abuse of children and/or senior citizens, foster care compliance, and/or ongoing

compliance; responding to emergency calls; conducting investigations in both non-

emergency and/or crisis intervention situations; transporting clients to receive services;

filling out paperwork; maintaining case files; interviewing witnesses; completing reports;

receiving phone calls from the DSS "Hotline;" and entering information into a computer

system to generate reports and/or guidance from computer systems run by the Virginia Department of Social Services.

74.     Upon information and belief, beginning in or about 2008, upper management at DSS or Defendant implemented an official policy or practice to greatly reduce and/or limit the number of children placed in foster homes by the City of Richmond.  As a result of said policy, Caseworkers were in turn limited in their ability to remove children from dangerous homes for placement into protective custody.

75.     Caseworkers did not exercise discretion and/or independent judgment in determining the outcome of their investigations.  Caseworkers' findings in their investigations were unilaterally changed by upper management at DSS.  Similarly, DSS management directed Caseworkers to close cases regardless of the findings of their investigations.  Facts supporting Plaintiffs' claim that Caseworkers did not exercise discretion or independent judgment include the following:

a.  A City Auditor's report in 2013 detailed how discretion was taken away from DSS Caseworkers.  The City Auditor's report revealed that DSS upper management's goal was to reduce the number of children in foster care.  In order to accomplish this goal, they made it practically impossible for children to be removed from their parents.

b.  Caseworkers were directed by management not to prepare Personal Protective Orders ("PPOs") and Emergency Removal Orders ("EROs").

c.  Management further edited prepared PPOs and EROs to change report content thereby minimizing the Caseworkers' findings and making it less likely to result in the removal of a child.

15

d.  Management's instructions prevented Caseworkers from effectuating or facilitating emergency removals.  In one instance detailed in the auditor's report, two toddlers were found roaming in their neighborhood at 2:00 a.m. A caseworker responded to the scene, but was instructed by management not to take the toddlers into custody, to release the toddlers to the custody of the caregiver, and not to prepare a PPO or ERO.

e.  Caseworkers were instructed that they needed management approval for the content of any communication with the City Attorney's Office.

f.  At all times pertinent hereto, any purported DSS staff authority to conduct emergency removals was illusory.  As a matter of course, children were left to remain in dangerous or otherwise unsuitable placements based on upper management decisions to delay, disregard, or reject recommendations from DSS Caseworkers to remove children from said homes and/or placements.

g.  A Quality Management Review, published in June 2013 ("QMR"), conducted by the Virginia Department of Social Services revealed reports that cases of abuse and neglect which had been "founded" by Caseworkers at Richmond DSS were routinely changed to "unfounded" by upper management.  In several cases, medical professionals determined a child to be at risk of irreparable harm or death, but DSS staff was told by upper management that protective custody was not an option in these cases.  For example, a caseworker determined a then current placement carried a high risk of abuse and neglect and requested a PPO.  However, upper

management dismissed the caseworker's recommendation and the
presumptively dangerous placement continued unabated.

h.  The QMR found that the number of PPOs and EROs filed by Richmond
DSS had decreased by 75% between 2008 and 2012 due to upper
management's policies preventing the removal of children from dangerous
or unsuitable parental homes and avoiding placement with foster or group
homes.

i.  Therefore, Caseworkers' recommendations were given little to no weight
or consideration, eviscerating any level of discretion or independent
judgment contained within their job description, if any.  Beginning in or
around 2008, DSS management's deliberate act of undermining its
Caseworkers was one of the means through which DSS advanced its
greater goal of keeping children in parental homes and out of foster or
group homes.

76.  Plaintiffs had excessive caseloads.  While the recommendation from the Child
Welfare League of America is approximately ten (10) to twelve (12) cases per month,
Plaintiffs have had caseloads of up to 130 active cases.

77.  Caseworkers' caseloads necessitated working through their lunch breaks,
working from home after their normal office hours, and on weekends.

78.  Defendant knew or had constructive knowledge that Plaintiffs were regularly
working more than forty (40) hours per week.

79.     Plaintiffs have been told by their supervisors and upper management that they do not have 40 hour per week jobs, and that they need to do whatever it takes to get their jobs done.

80.     The City failed to provide, or allow for, necessary training of its Caseworkers. The State Board of Social Services established a mandated training plan for all Child Protective Services staff.  However, Richmond DSS Caseworkers held such heavy caseloads, and worked so many hours, that many were not permitted by management to attend the training(s).

81.     Plaintiffs have been told by management to cancel scheduled trainings because they are too busy.

82.     The QMR found that none of the DSS's Child Protective Services staff had completed all mandated training.

83.     Upon information and belief, the Virginia Department of Social Services ("VDSS") sets the policies and procedures for Caseworkers' job duties.  Caseworkers' duties involve applying the standards and techniques described in VDSS manuals or other sources to determine the correct response to an inquiry or set of circumstances.

84.     At all times relevant herein, Plaintiffs and other similarly situated employees were regularly required to work, and performed work, for the Defendant for more than forty (40) hours in a workweek on behalf of Defendant.

85.     At all times relevant herein, Plaintiffs and other similarly situated employees did not perform as a primary duty managerial tasks over other employees, such as: interviewing, selecting, or training employees; setting employees' schedules or hours of work; directing employees' work; maintaining production or sales records; appraising

employee productivity and efficiency; handling employee complaints and grievances; and disciplining employees.

86.     At all times relevant herein, Plaintiffs and other similarly situated employees did not perform work directly related to the management or general business operations of their employer such as: advising the management, planning, negotiating, purchasing, promoting sales, or business research and control.

87.     At all times relevant herein, Plaintiffs and other similarly situated employees did not perform work requiring advance knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

88.     At all times relevant herein, Plaintiffs and other similarly situated employees did not perform as a primary duty work that includes the exercise of discretion and independent judgment with respect to matters of significance.

89.     At all times relevant herein, Plaintiffs and other similarly situated employees:

    a.  did not have the authority to formulate, affect, interpret, or implement management policies or operating practices;

    b.  did not perform work that affected business operations to a substantial degree;

    c.  did not have authority to commit the City in matters that have significant financial impact;

    d.  did not have authority to waive or deviate from established policies and procedures;

    e.  did not have authority to negotiate and bind Defendant on significant matters; and

f.   were not involved in planning long- or short-term business objectives.

90.   At all times relevant herein, Plaintiffs' job duties did not meet the criteria for any exemption to the overtime compensation requirements of the FLSA.

91.   Upon information and belief, until the City reclassified Caseworkers, the City classified these employees as exempt only under the "professional" exemption from the FLSA.  A prior audit conducted by the City concluded that Social Workers and Social Work Specialists were only entitled to the professional exemption, not any other exemption.

92.   Richmond DSS does not require Caseworkers to have a degree in a specific field.  Caseworkers may either have a bachelor's degree in what the City terms "Human Services," or they may have a Bachelor's Degree in any field plus a minimum of two (2) years of experience in what the City terms the "Human Services" field.

93.   "Human Services" is not a field that requires a prolonged course of specialized instruction.

94.   "Human Services" is a broad and generic term used by the City to include such far ranging and unrelated areas such as counseling, gerontology, guidance and counseling, family and childhood development, psychology, sociology, or "other" areas.

95.   Caseworkers are not required to have a Bachelor's or Master's degree in Social Work.

96.   The City does not require Caseworkers to be Licensed Clinical Social Workers (LCSW's).

97.   Although some Caseworkers may have their LCSW licenses, Richmond DSS Caseworkers do not perform clinical social work for the City of Richmond.

98.     Prior to sometime in June 2015, the Defendant misclassified Plaintiffs and other similarly situated employees as exempt and failed to compensate them for overtime hours worked pursuant to the requirements of the FLSA.

99.     At all times relevant herein, Defendant intended to deprive Plaintiffs of the overtime pay they were entitled to under the FLSA, or acted with reckless disregard for Plaintiffs' rights under the FLSA

<b><u>The Off The Clock Class:</u></b><br><b><u>Benefit Programs Specialists</u></b>

100.     Defendant uses the job title "Benefit Programs Specialist" to designate certain employees who work within the benefits division of Richmond DSS.

101.     Plaintiffs Gravely, Huff, and Rawlings are or were employed as Benefit Programs Specialists.

102.     The job duties of Benefit Programs Specialists include processing applications for state and/or federal benefit programs including Medicaid, TANF, and SNAP.

103.     Benefit Programs Specialists determine whether applicants are eligible for these programs by referring to and following state eligibility guidelines.

104.     Benefit Programs Specialists are classified as FLSA non-exempt employees.

105.     Benefit Programs Specialists regularly work more than 40 hours per week.

106.     Benefit Programs Specialists are not compensated at a time-and-a-half rate for all hours they are suffered or permitted to work over 40 per week.

107.     Upon information and belief, Defendant has an official pay policy whereby the City's timekeeping system, RAPIDS, automatically deducts 60 minutes per shift from the time of non-exempt DSS employees including all Benefit Programs Specialists.

108.    Upon information and belief, such time is deducted from each employee's shift to reflect a lunch break, regardless of whether or not the affected employee actually takes an uninterrupted one-hour lunch break.

109.    Benefit Programs Specialists regularly worked without taking an uninterrupted 60 minute break for lunch.

110.    Upon information and belief, DSS has a practice of authorizing Benefit Programs Specialists to work overtime on specific cases or in certain other instances.

111.    Upon information and belief, DSS assigns a "maximum time" that a Benefit Programs Specialists may be paid for processing these cases while working beyond their regular shift, regardless of the time employees actually spend working on these cases.

112.    Upon information and belief, Benefit Programs Specialists are provided with "Overtime Logs" in which to enter their time spent working on these cases beyond their regular shifts.

113.    Upon information and belief, Defendant instructs employees to fill out their Overtime Logs by only entering the "maximum time" allotted to their cases, regardless of the actual amount of time they spent working.

114.    Upon information and belief, Defendant instructs Benefit Programs Specialists not to enter their actual time into RAPIDS if such time exceeds the "maximum time" permitted by the City when working beyond their shifts.

**<u>Both Classes of Plaintiffs Are Entitled to Overtime</u>**

115.    At all times relevant herein, Plaintiffs and other similarly situated employees were regularly required to work, and performed work, for the Defendant for more than forty (40) hours in a workweek on behalf of Defendant.

116.    At all times relevant herein, the "Misclassification" Plaintiffs and other similarly situated employees did not perform as a primary duty managerial tasks over other employees, such as: interviewing, selecting, or training employees; setting employee's schedule or hours or work; directing employee's work; maintaining production or sales records; appraising employee productivity and efficiency; handling employee complaints and grievances; and disciplining employees.

117.    At all times relevant herein, the "Misclassification" Plaintiffs and other similarly situated employees did not perform work directly related to the management or general business operations of their employer such as: advising the management, planning, negotiating, purchasing, promoting sales, or business research and control.

118.    At all times relevant herein, the "Misclassification" Plaintiffs and other similarly situated employees did not perform work requiring advance knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

119.    At all times relevant herein, the "Misclassification" Plaintiffs and other similarly situated employees did not perform as a primary duty work that includes the exercise of discretion and independent judgment with respect to matters of significance.

120.    At all times relevant herein, the "Misclassification" Plaintiffs and other similarly situated employees of Defendant did not have authority to formulate, affect, interpret, or implement management policies or operating practices.

121.    At all times relevant herein, the "Misclassification" Plaintiffs and other similarly situated employees:

    g.  did not have the authority to formulate, affect, interpret, or implement management policies or operating practices;

    h.  did not perform work that affected business operations to a substantial degree;

    i.  did not have authority to commit the City in matters that have significant financial impact;

    j.  did not have authority to waive or deviate from established policies and procedures;

    k.  did not have authority to negotiate and bind Defendant on significant matters; and

    l.  were not involved in planning long- or short-term business objectives.

122.    At all times relevant herein, the "Misclassification" Plaintiffs' job duties did not meet the criteria for any exemption to the overtime compensation requirements of the FLSA.

123.    Prior to approximately June 2015, the Defendant misclassified the "Misclassification" Plaintiffs and other similarly situated employees as exempt and failed to compensate them for overtime hours worked pursuant to the requirements of the FLSA.

124.    At all relevant times, the "Off the Clock" Plaintiffs, and those similarly situated, were subject to the same official pay policy whereby such Plaintiffs were suffered or permitted to work in excess of 40 hours per week without receiving full overtime compensation for all hours worked as a result of Defendants' unlawful practices including but not limited to:

a.  Automatically deducting time from the employees' shift each day for a lunch break, regardless of whether or not such employees actually took an uninterrupted lunch break; and

b.  Arbitrarily limiting the overtime pay for employees based on a "maximum time" allowed per case, regardless of whether or not such employees actual time worked exceeded such limits.

125.    At all times relevant herein, Defendant intended to deprive Plaintiffs of the overtime pay they were entitled to under the FLSA, or acted with reckless disregard for Plaintiffs' rights under the FLSA.

## REPRESENTATIVE ACTION ALLEGATIONS

126.    Plaintiffs file this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as "representative" Plaintiffs.  Plaintiffs each consent to become a party plaintiff in this representative FLSA action, as evidenced by each Plaintiff's "Consent to Become Party to Collective Action under 29 U.S.C. § 216," already filed with the Court.

## <u>Representative Allegations Applicable to All Plaintiffs</u>

127.    Defendant employs, and has employed multiple persons in the same job functions and/or positions as Plaintiffs and putative Plaintiffs occupy.

128.    These employees perform, and have performed, functions which entitle them to payment of overtime compensation.

129.    These employees have been denied overtime wages in violation of the FLSA.

130.    On information and belief, Defendant's pay, administrative, recordkeeping, and supervisory operations are centrally managed as a single enterprise.

131.    There are two proposed FLSA "collective" or "classes" of similarly situated employees, composed of all present and former employees of Defendant, who performed the same or similar job functions as Plaintiffs, are or were subject to the same pay practices, and have been employed within three (3), or more, years of the date of the filing of this action.

132.    Plaintiffs assert that Defendant's willful disregard of the overtime laws described herein entitles Plaintiffs and similarly situated employees to the application of the three (3) year limitations period.

133.    At all times relevant hereto, Defendant was a "public agency" as that term is defined by 29 U.S.C. §§ 203(e)(2)(C) and 203(x).

134.    Plaintiffs' job duties, and the job duties of those similarly situated to Plaintiffs, are specifically not exempt from the coverage of the FLSA.

135.    At all relevant times, Plaintiffs and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

### Representative Allegations Applicable to the Misclassification Class Plaintiffs

136.    The Misclassification Class includes Plaintiffs and putative Plaintiffs holding the job titles of Family Services Specialist, Social Work Specialist, Family Services Worker, and Social Worker.

137.    Upon information and belief, these job titles were previously classified as exempt by the Defendant.

138.    All or most of Defendant's employees performing functions similar to the representative Misclassification Class Plaintiffs are subject to common, uniform time-keeping and payroll practices.

139.    The Misclassification Class Plaintiffs, and those similarly situated, perform similar job functions.

140.    The Virginia Department of Social Services exerts significant control over the methods by which the Misclassification Class Plaintiffs perform their job duties such that they do not exercise sufficient discretion or independent judgment to entitle Defendant to assert any exemption to the FLSA.

141.    The Richmond Department of Social Services likewise exerts significant control over the methods by which the "Misclassification" Plaintiffs perform their job duties such that they do not exercise sufficient discretion or independent judgment to entitle Defendant to assert any exemption to the FLSA.

142.    Defendant compensated, and continues to compensate, the Misclassification Class Plaintiffs and those similarly situated, on a uniform compensation basis common to Plaintiffs and other persons performing similar job functions.

**Representative Allegations Applicable to the Off the Clock Class Plaintiffs**

143.    The Off the Clock Class includes Plaintiffs and putative Plaintiffs holding the job title Benefit Programs Specialist.

144.    Upon information and belief, these job titles are classified as non-exempt by the Defendant.

145.    All or most of Defendant's employees performing functions similar to the representative Off the Clock Class Plaintiffs are subject to common, uniform time-keeping and payroll practices, including the automatic deduction of time for a lunch hour, regardless of whether or not the employee takes an uninterrupted hour for lunch.

146.     The Off the Clock Class Plaintiffs, and those similarly situated, perform similar job functions.

147.     Defendant compensated, and continues to compensate, the Off the Clock Class Plaintiffs and those similarly situated, on a uniform compensation basis common to Plaintiffs and other persons performing similar job functions.

## COUNT I - Violation of the 29 U.S.C. § 207
## Failure to Pay Overtime Compensation

148.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

149.     At all times relevant herein, Plaintiffs were "employees" of the Defendant as that term is defined by 29 U.S.C. §203(e)(1).

150.     At all times relevant herein, the Defendant was an "employer" of the Plaintiffs as that term is defined by 29 U.S.C. §203(d).

151.     At all relevant times herein Plaintiffs were not exempt from the overtime pay requirements of the FLSA, and were entitled to receive overtime pay under the FLSA for all time worked beyond forty (40) hours in a workweek.

152.     Defendant failed to pay Plaintiffs their overtime rate of pay for the time they worked beyond forty (40) hours in a workweek.

153.     At all times relevant herein, Defendant was aware of the overtime requirements of the FLSA.

154.     At all times relevant herein, Defendant knew or should have known that the Misclassification Class Plaintiffs did not qualify for an exemption to the overtime pay requirements of the FLSA.

155.    At all times relevant herein, Defendant knew or should have known that the Off the Clock Class Plaintiffs were not being properly compensated for all of their overtime hours worked.

156.    Defendant's failure to pay overtime compensation to the Plaintiffs was willful and not in good faith.

WHEREFORE, the Plaintiff respectfully prays that this Court award the following relief:

    a.   an order conditionally certifying a group of putative Collective Action members, for both the Misclassification Class and the Off the Clock Class, and approving a notice to be sent to all such class members, notifying them of this representational lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

    b.   money damages for all unpaid overtime compensation;

    c.   liquidated damages in an amount equal to the award of damages pursuant to 29 U.S.C. § 216(b);

    d.   pre-judgment and post-judgment interest;

    e.   entry of a declaration that the Defendant violated Plaintiffs' rights under the Fair Labor Standards Act by failing to compensate them for overtime hours worked on behalf of the Defendant;

    f.   an order permanently enjoining Defendant from prospectively violating the FLSA with respect to Plaintiffs and the Putative Collective Action Members and similarly situated employees;

g.  injunctive relief ordering Defendant to come into compliance with the FLSA to the extent not already complied with;

h.  attorneys' fees and costs incurred in bringing this action; and

i.  any and all further relief permissible by law.

Plaintiffs respectfully demand **TRIAL BY JURY**.

Respectfully submitted,

By:   _/s/_____
Craig Juraj Curwood (VSB No. 43975)
Philip Justus Dean (VSB No. 86335)
Attorneys for Plaintiffs
Curwood Law Firm, PLC
530 E. Main Street, Suite 710
Richmond, VA 23219
Telephone: (804) 788-0808
Fax: (804) 767-6777
ccurwood@curwoodlaw.com
pdean@curwoodlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September 2015, a copy of the foregoing was served by electronic and first class mail to the following:

Laura K. Drewry, Esq.
Office of the City Attorney
900 East Broad Street
City Hall, Suite 300
Richmond, Virginia 23219

____/s/_____
Craig Juraj Curwood

30